In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

STATE OF MISSOURI, ) ED108656
 )
 Respondent, ) Appeal from the Circuit Court
 ) of the City of St. Louis
 ) 1922-CR02121
v. )
 ) Honorable Clinton R. Wright
JAMEL JONES, )
 ) Filed: March 2, 2021
 Appellant. )

 Jamel Jones (Appellant) appeals from the trial court’s judgment, after a jury trial,

convicting him of eight counts of first-degree statutory sodomy, four counts of second-degree

statutory sodomy, and two counts of first-degree child molestation. The trial court sentenced

him as a persistent offender to consecutive 15-year sentences on three counts of first-degree

statutory sodomy, three consecutive 10-year sentences on three other counts of first-degree

statutory sodomy, concurrent 10-year sentences on the two counts of child molestation, and

concurrent 15-year sentences for the remaining two counts of first-degree statutory sodomy and

for the four counts of second-degree statutory sodomy, for a total sentence of 75 years of

imprisonment. We affirm.

 BACKGROUND

 Appellant was charged in the Circuit Court of the City of St. Louis with eight counts of

first-degree statutory sodomy, four counts of second-degree statutory sodomy, and two counts of
first-degree child molestation. 1 Viewed in the light most favorable to the verdict, the following

evidence was adduced during the week-long trial.

 In 2003 Appellant began a relationship with Wanda Dailey (Mother), the mother of

victim daughters, PD 2 and AD when PD was “really little” and AD was just born. AD thought

of Appellant as her real father. Appellant and Mother had another daughter, JJ, and a son

together. The family struggled to meet their basic needs and moved frequently. They lived in

very small apartments throughout St. Louis on West Steins, Indiana, Texas, Gravois, and South

Grand streets. PD moved between the apartments with Mother’s and her father’s home in Poplar

Bluff. In 2016, PD and her own infant moved into the Gravois apartment with Mother, but they

were permanently evicted in December 2016, after an argument turned physical and police

became involved.

 In February 2017, a suicide note written by AD was discovered at school. It alleged

Appellant was molesting her and her sister JJ. AD was taken to the hospital by police and

questioned by social worker, Karen Gudic, and by Children’s Advocacy Center (CAC)

investigator, Tammy Hackworth. JJ and her brother were also taken to the hospital and

interviewed. PD alleged Appellant had molested her, too. Appellant turned himself in to the

police. He was indicted with fourteen counts of sex offenses against PD, AD, and JJ for events

alleged to have occurred from January 1, 2011, though February 2, 2017.

 The three victims, PD, AD, and JJ, testified during the September 2019 trial about the

various acts of sexual contact they alleged against Appellant. PD was 20 years old, AD was

almost 16, and JJ was 13 at trial. They alleged that Appellant inflicted numerous and different

1
 Appellant was also charged in Count 12 with one count of possession of a controlled substance, but that was
severed from this case prior to the jury trial. The counts were renumbered for submission to the jury but not for
judgment and sentence.
2
 We refer to the victims by their initials to protect their privacy. Section 595.226, RSMo. 2017.

 2
kinds of sexual acts on them at different residences over time. The State submitted to the jury

the acts and dates in Instruction Nos. 5 through 18.

 January 2011 – January 2012

 Instruction 9/Count 5: Statutory Sodomy First (PD)
 Instruction 10/Count 6: Statutory Sodomy First (PD)

 The alleged acts began between January 1, 2011, and January 1, 2012, when the family

lived in the West Steins apartment and PD was in fifth or sixth grade at the Lyon school. PD

alleged that while they were playing the game “Four Walls,” where everyone hid with the lights

off and Appellant would look for them, he would find PD and they would have oral sex. PD

explained sex acts would happen on the side of the bed, in the bathroom, or various places in the

apartment even though it was small. The State charged first-degree statutory sodomy in Count 5

and instructed the jury in Instruction No. 9, asking them to find Appellant placed his genitals in

PD’s mouth during this time period. Count 6 also charged first-degree statutory sodomy related

to PD, and instructed the jury with Instruction No. 10, asking the jury to find that Appellant

placed his mouth on PD’s genitals during this time period.

 March 2013 – December 2014

 Instruction 12/Count 8: Statutory Sodomy Second (PD)
 Instruction 13/Count 9: Statutory Sodomy Second (PD)
 Instruction 14/Count 10: Statutory Sodomy Second (PD)

 PD testified that Appellant did “sexual things” to her about when she was in fifth grade.

PD testified that during the time their family lived in the Indiana apartment, approximately

March 7, 2013 through December 31, 2014, Appellant had her get out of bed at night to touch

her and have her perform oral sex on him. She said it was not the same every time, but these

were things he did to molest her. The State charged Appellant with Count 8, second-degree

 3
statutory sodomy, and instructed the jury in Instruction No. 12 to find Appellant guilty if they

believed he knowingly placed his genitals in PD’s mouth during this time period.

 PD also testified there was a time when the other kids were at a park and Mother went to

the store. She said Appellant performed oral sex on her on the bathroom floor while they lived

in the Indiana apartment. The State charged Appellant in Count 9, second-degree statutory

sodomy, and instructed the jury in Instruction No. 13, to find Appellant guilty for knowingly

placing his mouth on PD’s genitals during the time period from March 7, 2013 to December 31,

2014. PD also testified Appellant touched her with his hand as one of the ways he molested her.

Appellant did this when everyone else was asleep. The State charged Appellant with Count 10,

second-degree statutory sodomy, and also asked the jury to find Appellant guilty of acts

occurring during the same time period – March 7, 2013, through December 31, 2014. Instruction

No. 14 asked the jury to find Appellant guilty if they believed he knowingly touched PD’s

genitals with his hand during this time.

 May 1, 2014 – October 14, 2015

 Instruction 5/Count 1: Child Molestation (AD)

 AD testified that Appellant started to touch her “private areas” when she was doing

gymnastics moves in a swimsuit. He made her promise not to tell anyone. He also started

touching her “behind” over her swimsuit. AD testified that for the time period of May 1, 2014

through October 14, 2015, when she was 11 years old and the family was living in an apartment

on Texas, Appellant touched her vagina over her clothes. She provided general details about

putting on clothing before he touched her this way. She said Appellant threatened to kill AD’s

mother if AD ever told anyone about the abuse. The State charged Appellant with Count 1, child

 4
molestation, and instructed the jury in Instruction No. 5 to find him guilty if they believed he

touched AD’s genitals through her clothing during this time period.

 March 28, 2016 – November 1, 2016

 Instruction 16/Count 12: Statutory Sodomy First (JJ)

 During the time period from March 28, 2016, to November 1, 2016, when the family

lived in the Gravois apartment, JJ remembered Appellant touching her vagina with his mouth on

one occasion. Appellant cross-examined JJ to impeach her credibility regarding her deposition

testimony that she was touched this way 25 percent of the 100 times of abuse, or five times, but

the deposition testimony was not properly admitted for its truth as substantive evidence. The

State charged Appellant with Count 12, statutory sodomy in the first degree, and instructed the

jury in Instruction No. 16 to find Appellant guilty of the crime if they believed he knowingly

placed his mouth on JJ’s genitals during this time period when JJ was less than twelve years old.

 October 15, 2016 – December 31, 2016

 Instruction 6/Counts 2: Statutory Sodomy First (AD)
 Instruction 7/Count 3: Child Molestation (AD)

 During a very limited time when the family lived in the Grand/“Bates” apartment, AD

testified that Appellant committed several acts of sexual misconduct. She said “sometimes” it

happened in the back room, sometimes in the front room, sometimes when her sister was around,

sometimes when she was sitting up, and sometimes when she was lying down. The State

charged Appellant with Count 2, first-degree statutory sodomy, and instructed the jury in

Instruction No. 6 to find Appellant guilty if they found he knowingly touched AD’s genitals with

his hand during this time when AD was less than fourteen years old.

 AD further testified that Appellant would put his mouth on her breasts during this time

period, sometimes to get her horny before he touched her vagina. The State charged Appellant

 5
with Count 3, child molestation, and instructed the jury in Instruction No. 7 to find Appellant

guilty if they believed he touched the breasts of AD with his mouth during this time period when

AD was less than fourteen years old.

 November 1, 2016 – January 31, 2017

 Instruction 15/Count 11: Statutory Sodomy First (JJ)
 Instruction 17/Count 13: Statutory Sodomy First (JJ)

 JJ testified that during the time her family lived in the Gravois apartment, starting when

she was ten years old, she remembered Appellant touching her genitals with his hand. She was

not certain of the day or time it happened, nor could she recall how many times. She knew it

happened more than once. The State charged Appellant in Count 11 with first-degree statutory

sodomy and instructed the jury in Instruction No. 15 to find Appellant guilty if they believed that

he knowingly touched JJ’s genitals with his hand during this time period.

 JJ also testified she remembered touching Appellant’s penis one time when they lived at

the Gravois apartment and did not do so anywhere else. She said Appellant put his hand next to

hers and just did nothing. During a deposition not admitted for its truth, she testified she did

“less than five times.” The State charged Appellant in Count 13 with statutory sodomy in the

first degree and instructed the jury in Instruction No. 17 to find Appellant guilty if they believed

he knowingly placed JJ’s hand on his genitals during this time period.

 January 1, 2017 – February 17, 2017

 Instruction 8/Count 4: Statutory Sodomy First (AD)
 Instruction 18/Count 14: Statutory Sodomy First (AD)

 AD testified that during the time her family lived in the Grand apartment, “multiple

times” and in “different scenarios,” Appellant would use his mouth on her genitals. The State

charged Appellant with Count 4, statutory sodomy in the first degree, and instructed the jury in

 6
Instruction No. 8 to find Appellant guilty if they believed he knowingly placed his mouth on

AD’s genitals during this time period when AD was less than fourteen years old.

 AD testified generally that Appellant placed her hand on his genitals when they lived in

the Grand apartment. She did not know how many times this happened or how often, but it

happened more than once. Her testimony alleged the same conduct occurred in the Gravois and

Texas apartments, but the jury was instructed to determine Appellant’s guilt only during the

timeframe when the family lived in the Grand apartment. The State charged Appellant with

Count 14, first-degree statutory sodomy and instructed the jury in Instruction No. 18 to find

Appellant guilty if it believed he knowingly placed AD’s hand on his genitals during this time

period when she was less than 14 years old.

 Verdicts, Sentencing, and Appeal

 The jury retuned verdicts finding Appellant guilty of all counts. Appellant filed a motion

for new trial and a supplemental motion for new trial alleging, in part, that the verdicts were not

unanimous. The trial court entered a written order denying the motions. The trial court found

Appellant to be a prior and persistent offender based on guilty pleas for possession of a

controlled substance and first-degree tampering. On January 15, 2020, the trial court sentenced

Appellant to serve consecutive 15-year sentences on three counts of first-degree statutory

sodomy, three consecutive 10-year sentences on three other counts of first-degree statutory

sodomy, concurrent 10-year sentences on the two counts of child molestation, and concurrent 15-

year sentences for the remaining two counts of first-degree statutory sodomy and for the four

counts of second-degree statutory sodomy, for a total sentence of 75 years of imprisonment in

the Missouri Department of Corrections. This appeal follows.

 7
 DISCUSSION

 Appellant raises three points on appeal, each alleging the trial court erred in its judgment

and sentence. First, Appellant claims the trial court plainly erred in submitting several jury

instructions, accepting the guilty verdicts, and sentencing him because they failed to specify a

particular incident of sexual conduct or instruct the jury that they must unanimously agree on the

same incident of conduct in presenting evidence of multiple acts of alleged sexual conduct with

AD, PD, and JJ. Second, Appellant alleges the trial court erred in sentencing him as a persistent

offender as to several counts because the State failed to prove he pled guilty to two felonies

before the commission of those offenses. Third, Appellant alleges the trial court erred in

denying his motions for judgment of acquittal at the end of the State’s case and at the close of all

the evidence because the evidence was insufficient as a matter of law. We review each point in

the order raised.

 Point I

 In his first point, Appellant alleges the trial court plainly erred in submitting to the jury

Instruction Nos. 5 through 10 and Instruction Nos. 12 through 18, and then accepting the guilty

verdicts and in sentencing Appellant. Appellant contends the verdict directors for Counts 1

through 6 and Counts 8 through 14 failed to specify a particular incident of sexual contact, or

instruct the jurors that they must unanimously agree on the same incident or conduct, thereby

violating Appellant’s rights to due process, a fair trial, unanimous verdict, and freedom from

double jeopardy. Appellant alleges the State presented evidence of multiple acts of alleged

sexual contact with AD, PD, and JJ, including multiple separate instances of hand and mouth

contact to vagina, hand to penis contact, mouth to breast contact, and touching through clothes

that occurred from 2011 to 2017 in apartments throughout St. Louis on the streets of West Steins,

 8
Texas, Gravois, and Grand, yet the verdict directors did not delineate these incidents from each

other. Therefore, it was unclear as to which incident Appellant was found guilty of, allowing the

possibility that the jurors failed to unanimously find the same incident of sexual contact for each

count. Appellant argues this resulted in manifest injustice because he was entitled to unanimous

verdicts of the jury upon the issue of his guilt of each particular act.

 Standard of Review

 Appellant affirmatively stated during trial that he had no objections to any of the verdict

directors. Therefore, the alleged error is not preserved. It is reviewable only for plain error.

State v. Myles, 479 S.W.3d 649, 656, 57 (Mo. App. E.D. 2015). To show the trial court plainly

erred in submitting an instruction, a defendant bears the burden of showing that the trial court so

misdirected or failed to instruct the jury that it is apparent to this Court that the error affected the

jury’s verdict. Id. at 655-56. Manifest injustice or miscarriage of justice results only if it is

apparent that the jury’s verdict was tainted by the instructional error. Id. at 656. Instructional

error seldom constitutes plain error. Id. at 655.

 Analysis

 In State v. Celis-Garcia, 344 S.W.3d 150, 155-56 (Mo. banc 2011), the Missouri

Supreme Court explained that a “multiple acts case” arises when evidence is presented of

multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but

the defendant is charged with those acts in a single count. Id. To determine if a case is a

multiple acts case requiring more specificity in a verdict director, courts consider the following

factors: “(1) whether the acts occur at or near the same time; (2) whether the acts occur at the

same location; (3) whether there is a causal relationship between the acts, in particular whether

 9
there was an intervening event; and (4) whether there is a fresh impulse motivating some of the

conduct.” Id. (citing 75B AM.JUR. 2D Trial § 1511).

 A defendant's right to a unanimous verdict would be protected in a multiple acts case by

either the state (1) electing the particular criminal act on which it will rely to support the charge,

or (2) the verdict director specifically describing the separate criminal acts presented to the jury

and instructing the jury that it must agree unanimously that at least one of those acts occurred.

Id. at 157.

 In Celis-Garcia the state presented evidence of multiple, separate instances of hand-to-

genital contact committed against both victims, any of which would have supported the charged

offenses. The Missouri Supreme Court held that because it was impossible to determine whether

the jury unanimously agreed on any one of the separate incidents, the verdict directors were

erroneous in permitting the jury to convict the defendant of two counts of sodomy without

identifying the acts the jurors were to agree she committed, thereby violating her right to a

unanimous jury verdict under the Missouri Constitution. Celis-Garcia, 344 S.W.3d at 158. The

jury was free to believe or disbelieve any of the witness testimony. Keveney v. Missouri Military

Acad., 304 S.W.3d 98, 105 (Mo. banc 2010). However, the Court noted the fact that Ms. Celis–

Garcia relied on evidentiary inconsistencies and factual improbabilities respecting each specific

allegation of hand-to-genital contact, which made it more likely that individual jurors convicted

her on the basis of different acts. Celis-Garcia, 344 S.W.3d at 159. Consequently, the Court

found that the verdict directors misdirected the jury in a way that affected the verdict, thereby

resulting in manifest injustice. Id.

 However, Celis-Garcia and its progeny do not require a finding of error in submitting the

multiple acts in one count when the evidence would not easily allow the jury to rely upon

 10
different acts to find the defendant guilty of multiple acts counts. In fact, a footnote in Celis-

Garcia distinguishes the specific acts in that case from others in which the evidence of a

defendant’s conduct in committing the same offense against a victim in a repeated,

indistinguishable manner such that the jury could not differentiate between the acts in each

verdict director. The Celis-Garcia Court noted:

 The state argues that requiring the state to differentiate between multiple acts would
 make it impossible to prosecute sexual abuse cases involving repeated, identical
 sexual acts committed at the same location and during a short time span because
 the victim would be unable to distinguish sufficiently among the acts. The case
 hypothesized by the state was not the one presented here because both [victims]
 provided details of multiple sexual acts that were committed at different times and
 in different locations.

Celis-Garcia, 344 S.W.3d at 157 n.8.

 Evidence of an appellant’s conduct in committing the same offense against a child victim

in a repeated, indistinguishable manner renders it impossible for the jury to differentiate between

the repeated acts falling within each verdict director, such that there is no violation of a

defendant’s right to unanimity. State v. Walker, 549 S.W.3d 7, 12 (Mo. App. W.D. 2018)

(multiple acts of statutory rape committed in an identical manner in the same location

approximately every other day over a period of time); State v. Armstrong, 560 S.W.3d 563, 570-

74 (Mo. App. E.D. 2018) (repeated acts of statutory sodomy, attempted statutory sodomy, and

child molestation were committed in the same manner and location during each charged time

period). When the jury has no evidentiary basis upon which to differentiate between the repeated

acts, the defendant’s right to a unanimous verdict is not at risk of being violated. Walker, 549

S.W.3d at 12. To meet the burden that plain error occurred which results in manifest injustice or

miscarriage of justice, the defendant must show it is apparent that the jury’s verdict was tainted

by the instructional error. Myles, 479 S.W.3d at 656-57.

 11
 Appellant’s case includes multiple acts in that there was evidence of multiple, distinct

criminal acts of sexual contact, each of which could serve as the basis for a criminal charge.

Celis-Garcia, at 155-56. Allegations of separate sexual acts Appellant performed with each of

the three girls served as a basis for each of the many criminal charges against him. To avoid

violating a defendant’s right to a unanimous verdict in a multiple acts case, the State was

required to either elect “the particular criminal act on which it will rely to support the charge,” or

the verdict director must specifically describe the “separate criminal acts presented to the jury,”

with the jury being instructed that it must unanimously agree that at least one of those acts

occurred. Id. at 157. The State elected the particular criminal acts to support the charges

against Appellant and the verdict directors specifically described the separate criminal acts

presented to the jury -- hand and mouth contact to vagina, hand to penis contact, mouth to breast

contact, and touching through clothes – as well as which victim was involved and the dates that

corresponded to the time the family was living in the apartment location described. Thus, our

focus is on whether the evidence reflects multiple, distinct acts of the separate acts described in

each verdict director such that it would warrant more specificity in the verdict directors to insure

jury unanimity. In applying the Celis-Garcia factors for multiple acts to each of the contested

verdict directors here, we find no multiple, distinct acts requiring more specificity than what the

verdict directors already provided to insure jury unanimity.

 Single-Act Verdict Directors

 Instruction No. 16 (Count 12: first-degree statutory sodomy, JJ)

 The State charged Appellant with Count 12, statutory sodomy in the first degree, and

instructed the jury with Instruction No. 16 to find Appellant guilty of the crime if they believed

he knowingly placed his mouth on JJ’s genitals in the City of St. Louis during this time period –

 12
March 28, 2016, to November 1, 2016, when JJ was less than twelve years old. The instruction

further asked the jury to find such conduct constituted deviate sexual intercourse. 3

 JJ testified on direct examination that she remembered Appellant touching her vagina

with his mouth on one occasion while in the apartment on Gravois in 2016. This testimony was

sufficient to focus the jury’s attention on a single act, as the State did in Instruction No. 16.

Appellant attempted to impeach JJ’s testimony with her prior inconsistent deposition testimony

but did not seek to admit her testimony as substantive evidence by asking if it was true. “To

admit a prior inconsistent statement as substantive evidence, the only necessary foundation is the

inquiry as to whether the witness made the statement and whether the statement is true.” State v.

Tolen, 295 S.W.3d 883, 889 (Mo. App. E.D. 2009) (citing State v. Reed, 282 S.W.3d 835, 838

(Mo. banc 2009)). Without a proper foundation for substantive evidence, impeachment evidence

of JJ’s prior inconsistent deposition testimony that Appellant touched her this way 25 percent of

the 100 times he abused her, or five times, does not provide substantive evidence of the alleged

crime here to convert this charge into a multiple acts count. Consequently, Instruction No. 16 is

not an instruction of multiple acts and thus, no error occurred in submitting it to the jury,

accepting the guilty verdict and sentencing Appellant.

 Instruction No. 17 (Count 13: first-degree statutory sodomy, JJ)

 The State charged Appellant with first-degree statutory sodomy in Count 13 and

instructed the jury in Instruction No. 17 to find Appellant guilty if they believed Appellant

knowingly placed JJ’s hand on his genitals on or between November 1, 2016, and January 31,

3
 Deviate sexual intercourse was defined by this and all the instructions as:
 any act involving genitals of one person, and the hand, mouth, tongue, or anus of another person
 or a sexual act involving the penetration, however slight, of the male or female sex organ, or the
 anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual
 desire of any person or for the purpose of terrorizing the victim.

 13
2017, in the City of St. Louis. The instruction asked the jury to find the conduct constituted

deviate sexual intercourse and that JJ was less than twelve years old. JJ testified at trial that she

remembered touching Appellant’s penis only one time in the apartment on Gravois. She

described the event in that Appellant placed his hand next to hers and did nothing. Similar to her

testimony regarding Count 12, Appellant argues that JJ’s prior deposition testimony that she was

touched this way 25 percent of the 100 times of abuse, or five times, is inconsistent with a single

incident described. We disagree and do not find this instruction in violation of the rule against

submitting multiple acts in one count because it is a single, descriptive incident.

 Multiple-Act Verdict Directors

 Instruction No. 6 (Count 2: first-degree statutory sodomy, AD)

 The State charged Appellant with Count 2, first-degree statutory sodomy, and instructed

the jury in Instruction No. 6 to find Appellant guilty if they found he knowingly touched AD’s

genitals with his hand during this time when AD was less than fourteen years old. AD testified

that during the time when her family lived in the Grand/“Bates” apartment, several acts of sexual

misconduct occurred. She said “sometimes” it happened in the back room, sometimes in the

front room, sometimes when her sister was around, sometimes when she was sitting up, and

sometimes when she was lying down. The instruction was narrowed by the date, between

October 15, 2016, and December 31, 2016, which corresponds to the time the family lived in the

Grand apartment. Distinguished from a multiple acts case described in Celis-Garcia, AD was

unable to differentiate a single episode of Appellant’s multiple incidents of touching her genitals

in the same apartment location and within a short period of time. 344 S.W.3d at 157 n.8. We do

not find the trial court erred in submitting the instruction, accepting the guilty verdict, and

sentencing Appellant on this count.

 14
 Instruction No. 7 (Count 3: child molestation, AD)

 The State charged Appellant with Count 3, child molestation, and instructed the jury in

Instruction No. 7 to find Appellant guilty if they believed he touched the breasts of AD with his

mouth during this time period of October 15, 2016, to December 31, 2016, when AD was less

than fourteen years old. AD testified that Appellant would put his mouth on her breasts during

this time period when the family lived in the Grand/“Bates” apartment, sometimes to get her

horny before he touched her vagina. It was not explicitly associated with any particular act of

hand-to-genital contact as Appellant claims. This frequent conduct, even when associated with

watching pornography, was impossible to identify as a single, specific act such that it should

have been instructed differently pursuant to Celis-Garcia, 344 S.W.3d at 157. The trial court did

not err in submitting the instruction, accepting the guilty verdict, and sentencing Appellant on

this count.

 Instruction No. 8 (Count 4: first-degree statutory sodomy, AD)

 The State charged Appellant in Count 4, statutory sodomy in the first degree, and

instructed the jury in Instruction No. 8 to find Appellant guilty if they believed he knowingly

placed his mouth on AD’s genitals during this time period between January 1, 2017, and

February 17, 2017, when AD was less than fourteen years old. The State instructed the jury to

find this conduct was deviate sexual intercourse. AD testified that during this time period when

her family lived in the Grand apartment, Appellant would use his mouth on her genitals

“multiple times” and in “different scenarios.” This generalized testimony did not specify a time

or place, AD said it happened more than once and she did not know how many times. We find

this was not a distinct act within the charged time period that could be differentiated in an

 15
instruction pursuant to Celis-Garcia, 344 S.W.3d at 157. The trial court did not err in submitting

the instruction, accepting the guilty verdict, and sentencing Appellant on this count.

 Instruction No. 9 (Count 5: first-degree statutory sodomy, PD)

 The State charged Appellant with first-degree statutory sodomy in Count 5 and instructed

the jury in Instruction No. 9 to find Appellant guilty if they believed he placed his genitals in

PD’s mouth during this time period between January 1, 2011, and January 1, 2012. The jury was

instructed to find this conduct was deviate sexual intercourse and that it was with a child less

than fourteen years old. The evidence showed that was the time when the family lived in the

West Steins apartment and PD was in fifth or sixth grade at the Lyon school. PD testified that

Appellant would play the game “Four Walls” with the kids, where everyone hid with the lights

off. When Appellant would look for everyone, he would find PD and have oral sex with her.

The sex acts would happen on the side of the bed, in the bathroom, or various places in the

apartment even though it was small. Unlike in Celis-Garcia, the conduct occurred frequently

and there was nothing distinguishable about each specific act. 344 S.W.3d at 158. The acts were

narrowed to a short timeframe of one year when the family lived in the West Steins apartment

where the game took place. It did not include other similar conduct PD described from a time

when she was younger and went to a different school. The prosecutor specifically argued this

instruction was for the conduct that occurred during the “Four Walls” game. The trial court did

not err in submitting the instruction, accepting the guilty verdict, and sentencing Appellant on

this count.

 Instruction No. 10 (Count 6: first-degree statutory sodomy, PD)

 Similar to Count 5, the State charged Appellant with first-degree statutory sodomy in

Count 6, instructing the jury to find Appellant guilty in Instruction No. 10 if they believed

 16
Appellant placed his mouth on PD’s genitals during the same time period, from January 1, 2011,

to January 1, 2012. To find Appellant guilty, the State also asked the jury to find the conduct

was deviate sexual intercourse that occurred when the child was less than fourteen years old. PD

described engaging in oral sodomy with Appellant frequently during the game “Four Walls,” this

instruction was limited to the time period when this conduct occurred, and the prosecutor limited

it to the “Four Walls” game in argument. For the same reasons as we found in Instruction No. 9,

supra, the trial court did not err in submitting this instruction without objection, accepting the

guilty verdict, and sentencing Appellant on this count.

 Instruction No. 12 (Count 8: second-degree statutory sodomy, PD)

 The State charged Appellant with Count 8, second-degree statutory sodomy, and

instructed the jury in Instruction No. 12 to find Appellant guilty if they found he knowingly

placed his genitals in PD’s mouth during this time period between March 7, 2013 and December

31, 2014. The jury was required to find this conduct constituted deviate sexual intercourse and

PD was a child less than seventeen years old. PD testified that Appellant started to do “sexual

things” to her about when she was in fifth grade. She said that during the time their family lived

in the Indiana apartment, including the time from March 7, 2013, to December 31, 2014,

Appellant got her out of bed at night to touch her and have her perform oral sex on him. She said

it was not the same every time, but these were things he did to molest her. Again, the frequent

but non-distinctive acts were impossible to identify and instruct upon like in Celis-Garcia, 344

S.W.3d at 158. The instruction here was appropriate because of Appellant’s repeated similar

conduct against his victim. Thus, the trial court did not err in submitting this instruction without

objection, accepting the guilty verdict, and sentencing Appellant on this count.

 17
 Instruction No. 13 (Count 9: second-degree statutory sodomy, PD)

 Similar to Count 8, the State charged Appellant in Count 9 with second-degree statutory

sodomy, and instructed the jury in Instruction No. 13 to find Appellant guilty if they believed he

knowingly placing his mouth on PD’s genitals during the time period from March 7, 2013 to

December 31, 2014, which constituted deviate sexual intercourse and PD was less than

seventeen years old. This also correlated to the time the family lived in the Indiana apartment.

PD recalled Appellant performing oral sex on her on the bathroom floor when the other kids

were at a park and her mother went to the store. As in Count 8, Appellant’s conduct was not the

same every time, but repeatedly molested PD such that identification of a single distinct act was

impossible. The trial court did not err in submitting this instruction without objection, accepting

the guilty verdict, and sentencing Appellant on this count. Even assuming this instruction raises

some question because PD testified to conduct correlated to details of the family away at the park

and Mother at the store, in addition to the other acts of molestation that occurred outside the

presence of the family, we find the instruction did not result in a manifest injustice. Appellant

did not meet his burden of showing that plain error occurred in that the jury’s verdict was tainted

by instructional error. See Myles, 479 S.W.3d at 656-57.

 Instruction No. 14 (Count 10: second-degree statutory sodomy, PD)

 The State charged Appellant with Count 10, second-degree statutory sodomy, and also

instructed the jury in Instruction No. 14 to find Appellant guilty if they believed he knowingly

touched PD’s genitals with his hand during this time period of March 7, 2013, through December

31, 2014. The jury was required to also find this constituted deviate sexual intercourse and PD

was a child less than seventeen years old. In referencing the many ways Appellant molested her,

PD testified Appellant touched her with his hand at night when everyone else was asleep.

 18
Similar to Counts 8 and 9, PD testified the conduct was not the same every time, but Appellant

did these things to molest her. Just as we found in the other instructions, this does not raise a

Celis-Garcia issue of multiple acts in an instruction such that the jury could not unanimously

agree on any of the distinct acts because no single incident can be identified here based on the

repeated similar crimes Appellant committed against PD. 344 S.W.3d at 158. The trial court did

not err in submitting the jury instruction without objection, accepting the guilty verdict, and

sentencing Appellant on this count.

 Instruction No. 15 (Count 11: first-degree statutory sodomy, JJ)

 The State charged Appellant in Count 11 with first-degree statutory sodomy and

instructed the jury in Instruction No. 15 that it should find Appellant guilty if it believed that he

knowingly touched JJ’s genitals with his hand during this time period, from November 1, 2016

to January 31, 2017. The instruction required the jury to also find that such conduct was deviate

sexual intercourse and that JJ was a child less than twelve years old. JJ testified that during the

time her family lived in the Gravois apartment, starting when she was ten years old, she

remembered Appellant touching her genitals with his hand. She was not certain of the day or

time it happened, nor could she recall how many times. She knew it happened more than once.

This is not a multiple acts case like Celis-Garcia because here no single incident can be

identified, nor can the date or time, based on the frequent and similar conduct Appellant

committed against PD. 344 S.W.3d at 158. The trial court did not err in submitting the jury

instruction without objection, accepting the guilty verdict, and sentencing Appellant on this

count.

 19
 Instruction No. 18 (Count 14: first-degree statutory sodomy, AD)

 The State charged Appellant with Count 14, first-degree statutory sodomy, and instructed

the jury in Instruction No. 18 to find Appellant guilty if they believed he knowingly placed AD’s

hand on his genitals during this time period between January 1, 2017, and February 17, 2017,

when AD was less than fourteen years old. The jury also was required to find the conduct

constituted deviate sexual intercourse. AD testified generally that Appellant placed her hand on

his genitals when they lived in the Grand apartment. She did not know how many times this

happened or how often, but it happened more than once. Her testimony alleged the same

conduct occurred in the Gravois and Texas apartments, but the jury was instructed to determine

Appellant’s guilt only during the timeframe when the family lived in the Grand apartments. We

do not find this instruction raises a Celis-Garcia issue of multiple acts preventing a unanimous

verdict because here the indistinguishable acts occurred often without specificity.

 Under the circumstances here, the verdict directors for each count specifically described

the alleged conduct attributed to each victim by a specific date corresponding with the family’s

residence. Any further multiple, frequent, and non-specific conduct would have been impossible

to submit as single acts. Appellant failed to meet his burden in demonstrating the trial court

plainly erred in submitting jury instructions Nos. 5-10 and 12-18 by including multiple acts such

that they prevented a unanimous verdict and created a manifest injustice. Appellant’s first point

is denied.

 Point II

 In his second point, Appellant alleges the trial court erred in sentencing him as a

persistent offender as to Counts 1, 5, 6, 7, 8, 9, and 10, because the State failed to prove that

Appellant pled guilty to two felonies before the commission of those offenses and thereby

 20
violated Appellant’s rights to due process of law and a fair trial, as guaranteed by the Fifth and

Fourteenth Amendments to the U.S. Constitution, Article I, Sections 2, 10, and 18(a) of the

Missouri Constitution, and Section 558.016.6, RSMo. 4 Appellant claims the State’s evidence

was that Appellant pled guilty to possession of a controlled substance on October 14, 2015,

which occurred after the dates when Counts 1, 5, 6, 7, 8, 9, and 10 were alleged to have been

committed. The State argues Appellant waived his claim of plain error in agreeing that he was a

persistent offender, and nevertheless, the sentences were not affected by the persistent offender

finding.

 Standard of Review

 Appellant did not object to the prior and persistent finding at trial, nor did he raise the

error in his motions for a new trial. Rule 29.11(d). Plain error review is permitted at the

discretion of this Court pursuant to Rule 30.20, reviewing for plain errors affecting substantial

rights, which may be considered when the court finds that manifest injustice or miscarriage of

justice has resulted therefrom.

 An announcement of “no objection” amounts to an affirmative waiver of appellate review

of the issue. State v. Collins, 188 S.W.3d 69, 77 (Mo. App. E.D. 2006). When there is an

affirmative waiver, even plain error review is not warranted. Id. This general rule not only

applies when the issue is admissibility of evidence, but also when a court's conduct or ruling

regarding a jury is challenged as erroneous. Id. Appellant affirmatively waived this claim when

he agreed to be sentenced as a persistent offender and plain error review is not warranted.

4
 All statutory references are to RSMo. (2017).

 21
 Analysis

 Even assuming arguendo that Appellant did not affirmatively waive his claim of error, he

nonetheless has failed to show he was prejudiced by the error such that a manifest injustice has

resulted therefrom. “[C]ourts must look at whether the defendant has established that the

erroneous sentence classification resulted in manifest injustice.” State v. Darden, 263 S.W.3d

760, 770 (Mo. App. W.D. 2008). Here, it did not.

 The State must plead all essential facts in the information or indictment to warrant a

finding that the defendant is a prior or persistent offender. Section 558.021.1. The facts must be

pleaded, established, and found before the court submits the case to the jury. Section 558.021.2.

 Section 558.016.3 provides that a persistent offender is one who has been found guilty of

two or more felonies committed at different times. Section 558.016.6 states that the findings of

guilt “shall be prior to the date of the commission of the present offense.” Furthermore,

subsection 7 subjects a persistent offender to the authorized term of imprisonment that is one

class higher than the class of conviction. Section 558.016.7. If the court finds that a defendant is

a prior or persistent offender, then the judge sentences the defendant rather than allowing the jury

to recommend a sentence. Section 557.036.4(2). Where the court determines that a defendant is

a persistent offender, the defendant becomes subject to a greater maximum term of

imprisonment. Section 558.016.7; State v. Nesbitt, 299 S.W.3d 26, 29 (Mo. App. E.D. 2009).

 Appellant was indicted with fourteen counts of sex offenses against PD, AD, and JJ for

events alleged to have occurred from January 1, 2011, though February 2, 2017. Counts 1, 5, 6,

7, 8, 9, and 10 were for conduct alleged to have been committed prior to October 2015.

 The Superseding Indictment charging Appellant with fifteen counts alleged Appellant

was a prior and persistent offender pursuant to Sections 558.016 and 557.036, “punishable by

 22
sentence to an extended term of imprisonment” in that “he has pleaded guilty to, been found

guilty of, or been convicted of two or more felonies committed at different times.” It listed

felonies from May 24, 2001, when Appellant plead guilty to first-degree tampering in the City of

St. Louis, and October 14, 2015, when Appellant plead guilty to possession of a controlled

substance in the City of St. Louis. The order finding Appellant was a prior and persistent

offender was entered September 9, 2019, listing the October 14, 2015 felony of possession as

well as a June 22, 2001 felony of first-degree tampering with a motor vehicle.

 With one felony on his record prior to all counts in the indictment, Appellant was

properly found to be a prior offender and was not entitled to jury sentencing. State v. Anderson,

294 S.W.3d 96, 100 (Mo. App. E.D. 2009). Appellant admits the sentences for Counts 1, 5, and

6 were within both the standard and increased ranges, so it is “unclear how the sentences . . . may

have been affected.” State v. Jolley, 45 S.W.3d 548, (Mo. App. E.D. 2001). Moreover, “[i]t is

well established that the sentencer may consider a defendant's prior convictions.” State v.

Smith, 32 S.W.3d 532, 557 (Mo. banc 2000). Darden, 263 S.W.3d at 769. The court could have

considered the prior convictions regardless of the dates to determine an overall sentence even

without enhancing it based on persistent offender status. Appellant also alleges his parole

eligibility “could be affected by the error.” A speculative claim does not support a finding of

manifest injustice. State v. Stafford, 589 S.W.3d 705, 715 (Mo. App. E.D. 2019). Appellant

therefore does not meet his burden of showing a manifest injustice with respect to Counts 1, 5,

and 6; plain error is denied. Id. at 710-11.

 However, Appellant alleges he was subjected to an increased range of punishment on

Counts 7 through 10, from the standard range of up to 7 years to, instead, a sentence of 15 years,

the maximum punishment for a B felony. We find that Appellant’s numerous other counts were

 23
committed after the prior guilty plea and resulted in a long line of consecutive sentences totaling

75 years, such that a correction in sentences for Counts 7 through 10 would be negligible.

Without a showing of manifest injustice, we refuse to find plain error. Appellant’s second point

is denied.

 Point III

 Appellant’s third and final point alleges the trial court erred in denying his motions for

judgment of acquittal at the close of the State’s case and at the close of all of the evidence

because the State failed to prove beyond a reasonable doubt that Appellant committed the crimes

charged, and thereby violated his rights to due process of law and a fair trial, as guaranteed by

the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Sections 2, 10, and

18(a) of the Missouri Constitution. Appellant argues the evidence, when viewed in the light

most favorable to the verdict, was insufficient as a matter of law from which a reasonable juror

could have found beyond a reasonable doubt that the evidence was sufficient to sustain a verdict

as to the elements of the offenses because complaining witnesses PD, AD, and JJ were so

inconsistent and tainted that their testimony was completely lacking in evidentiary value such

that no reasonable juror could have found Appellant guilty.

 Standard of Review

 The court reviews the denial of a motion for judgment of acquittal to determine if the

state adduced sufficient evidence to make a submissible case. State v. Moore, 432 S.W.3d 779,

781 (Mo. App. E.D. 2014). We will affirm a trial court’s denial of a motion for judgment of

acquittal if, at the close of the evidence, there was sufficient evidence from which a reasonable

person could have found the defendant guilty of the charged offense. State v. Sistrunk, 414

S.W.3d 592, 596 (Mo. App. E.D. 2013). In considering whether the evidence is sufficient to

 24
support the jury’s verdict, we look to the elements of the crime and consider each to determine

whether a reasonable juror could find each of the elements beyond a reasonable doubt. State v.

Grim, 854 S.W.2d 403, 405 (Mo. banc 1993) (internal citations omitted). This Court reviews the

evidence and all reasonable inferences therefrom in the light most favorable to the verdict. Id.

 Analysis

 In arguing this point on appeal, Appellant focuses on the credibility of the victim

witnesses, PD, AD, and JJ, arguing that their testimony was “so lacking in evidentiary value that

no reasonable juror could have found Appellant guilty.” Appellant argues the victims were

impeached extensively about their lies, exaggerations, and inconsistencies. However, we defer

to the jurors' superior position to weigh and value the evidence, determine the witnesses’

credibility and resolve any inconsistencies in their testimony. State v. Lopez-McCurdy, 266

S.W.3d 874, 876 (Mo. App. S.D. 2008). The evidence adduced at trial, viewed in this light, is

detailed in the “Background” section of this opinion, supra, and we need not repeat it.

Moreover, if a party does not support its contentions with relevant authority or argument beyond

conclusory statements, the point is deemed abandoned. Kuenz v. Walker, 244 S.W.3d 191, 194

(Mo. App. E.D. 2007). See also Rule 84.04(e); Johnson v. Buffalo Lodging Assocs., 300 S.W.3d

580, 582 (Mo. App. E.D. 2009) (appellant did not develop her claim of error “by showing the

interaction between the relevant principles of law and the facts of the particular case” in violation

of Rule 84.04(e)). Appellant’s point raises no deficiency in the evidence as to any particular

crime or element thereof to support reversal on the trial court’s denial of his motion for judgment

of acquittal. The trial court did not err in denying Appellant’s motion. Appellant’s third point is

denied.

 25
 CONCLUSION

 The judgment of the trial court is affirmed.

 ____________________________________
 Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.

 26