

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101486 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Mark H. Neill |
| ERIC MYLES, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 8, 2015 |

## Introduction

Appellant Eric Myles ("Myles") appeals from the judgment entered by the trial court following a jury verdict finding Myles guilty of one count of first-degree assault (Count I), one count of first-degree robbery (Count III), and two counts of armed criminal action (Counts II and IV). In his first two points on appeal, Myles contends that the trial court committed plain error by submitting Jury Instruction No. 6, the State's verdict director for Count I, to the jury; and by submitting Jury Instruction No. 8, the State's verdict director for Count III, to the jury. In the remaining points on appeal, Myles challenges the sufficiency of the evidence supporting his convictions as to Counts I-IV, asserting that the trial court erred in accepting the jury's guilty verdicts. Because the trial court did not plainly err in submitting Jury Instructions Nos. 6 and 8 to the jury, and because sufficient evidence was presented at trial from which a reasonable juror could have found the essential elements of each of the charged crimes in Counts I-IV beyond a reasonable doubt, we affirm the judgment of the trial court.

## Factual and Procedural History

Myles was tried before a jury in February of 2014 and convicted of one count of first-degree assault (Count I), one count of first-degree robbery (Count III), and two counts of armed criminal action (Counts II and IV). Viewed in the light most favorable to the verdict, the following evidence was adduced at trial.

On January 10, 2012, Victim stopped at a gas station in the City of St. Louis. While walking back to his car, a man with a gun approached Victim and stated that he was robbing Victim. Victim grabbed the gun and struggled with the man. Two other men intervened, punching Victim and hitting him in the head with a hard object. The man with the gun then shot Victim. Victim's car was taken after the shooting. Victim testified that he could not identify any of the three men who attacked him.

Victim's car was found on January 11, 2012, in front of a home. The homeowner told police the car had been brought there by Anthony Greene ("Greene"). Greene was subsequently taken into custody and questioned by the police. Following Greene's interview, Myles was taken into custody and questioned. Myles initially denied any involvement in the robbery and shooting, but he changed his story once the police showed him a portion of Greene's interview in which Greene stated that he, Myles, and Antwon Johnson ("Johnson") were involved. At that point, Myles stated that Greene and Johnson were his cousins, and that the three men were at Johnson's home when they decided to go out on a "mission." Myles explained that "mission" meant going out and doing something bad. Myles stated that the three men went to the gas station, and that he and Greene stood at a bus stop across the street while Johnson approached Victim. Myles told police that Johnson pulled a gun on Victim, and that once the struggle ensued, Greene choked Victim and Myles hit Victim with a closed fist. Myles later stated that he

2

hit Victim with a brick. Myles also stated that Johnson shot Victim after Myles and Greene pulled Victim off of Johnson.

At trial, Myles denied being at the scene of the crime when the robbery and shooting occurred. The detective who interviewed Myles testified that the portion of Greene's interview that was played for Myles did not include the details of the crime that Myles provided when the police interviewed Myles. Before the jury instruction conference, and before the case was submitted to the jury, Myles made a motion for judgment of acquittal at the close of all the evidence which was denied by the trial court. The case was subsequently submitted to the jury.

Count I, the charge of first-degree assault, was submitted to the jury in Jury Instruction No. 6, which read as follows:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> That on or about January 10, 2012, in the City of St. Louis, State of Missouri, the defendant, acting with Antwann Johnson and Anthony Greene, knowingly caused serious physical injury to Christopher Bradford by shooting him, then you will find the defendant guilty under Count I of assault in the first degree.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
> As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Count III, the charge of first-degree robbery, was submitted to the jury in Jury Instruction No. 8, which read as follows:

> As to Count 3, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about January 10, 2012, in the City of St. Louis, State of Missouri, the defendant, acting with Antwann Johnson and Anthony Greene, took a 1998 Cadillac DeVille, which was property owned by Christopher Bradford, and

3

Second, that defendant did so for the purpose of withholding it from the owner permanently, and

Third, that defendant in doing so used physical force on or against Christopher Bradford for the purpose of overcoming resistance to the taking of the property, and

Fourth, that in the course of taking the property, Antwann Johnson was armed with a deadly weapon, and

Fifth, that Antwann Johnson was a participant with defendant in the commission of the offense, then you will find the defendant guilty under Count 3 of robbery in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Jury Instruction No. 5 was also submitted to the jury. Jury Instruction No. 5 read

as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids the other persons in committing it.

During the jury instruction conference, the trial court asked Myles's counsel if she had

any objections to the proposed verdict directing instructions. Counsel responded, "No, Judge."

The jury returned guilty verdicts on all counts, and the trial court sentenced Myles to a total of

twenty years' imprisonment. Myles subsequently filed a motion for new trial, which the trial

court denied. No claim of instructional error was raised by Myles in his motion for new trial.

This appeal follows.

## Points on Appeal

Myles presents four points on appeal. Myles's first two points on appeal assert plain

error by the trial court relating to jury instructions, while his latter two points challenge the

sufficiency of the evidence supporting his convictions. Myles contends that the trial court

committed plain error resulting in manifest injustice by submitting Jury Instruction No. 6, the

State's verdict director on the charged offense of first-degree assault and Jury Instruction No. 8,

4

the State's verdict director on the charged offense of first-degree robbery. In Point One, Myles avers that the trial court committed plain error in submitting Jury Instruction No. 6 because (1) it was not a Missouri Approved Jury Instruction; (2) it did not comply with the MAI-CR notes on use for the submission of offenses based on accomplice liability; (3) it did not require the jury to find beyond a reasonable doubt that Myles acted with the culpable mental state necessary to commit first-degree assault under a theory of accomplice liability; and (4) it permitted the jury to find Myles guilty of first-degree assault as a principal despite no evidentiary support for that finding. In Point Two, Myles argues that the trial court committed plain error in submitting Jury Instruction No. 8 because (1) it was not a Missouri Approved Jury Instruction; (2) it did not comply with the MAI-CR notes on use for the submission of offenses based on accomplice liability; (3) it did not require the jury to find beyond a reasonable doubt that Myles acted with the culpable mental state necessary to commit first-degree robbery under a theory of accomplice liability; and (4) it ascribed conduct elements to Myles for which there was no evidentiary support.

In his remaining two points on appeal, Myles contends that the trial court erred in accepting the jury's guilty verdicts and entering convictions against him on Counts I and II. Myles asserts that the verdict-directing instruction for Count I, Jury Instruction No. 6, permitted the jury to find Myles guilty of first-degree assault either on a theory of principal liability or accomplice liability despite the fact that there was no evidentiary support for a guilty finding based on principal liability. Myles also argues that because his conviction on Count II, armed criminal action, is premised upon the first-degree assault charge in Count I, his conviction on Count II cannot stand on its own. Finally, Myles maintains that the trial court erred in accepting the jury's guilty verdicts and entering convictions against him as to Counts III and IV.

5

Specifically, Myles claims that the verdict-directing instruction for Count III, Jury Instruction No. 8, required the jury to find beyond a reasonable doubt that Myles had committed certain conduct elements for which there was insufficient evidentiary support. Myles further argues that because his conviction on Count IV for armed criminal action is based on the first-degree robbery charge in Count III, his conviction on Count IV cannot stand on its own.

Discussion

## I. Points One and Two—Instructional Error

### A. Standard of Review

Importantly, Rule 28.03[1] requires counsel to make specific objections to jury instructions that are considered erroneous before the jury retires to consider its verdict. This rule also requires that the instructional objections be raised in the motion for new trial. Rule 28.03; State v. Wright, 30 S.W.3d 906, 911 (Mo. App. E.D. 2000). Here, counsel for Myles did neither, and thus did not preserve the alleged error for appellate review. Id.; Rule 30.20. As a result, we may only review Myles's claims contained in Points One and Two, if at all, for plain error. Id.

Plain error is evident, obvious, and clear error. State v. Jordan, 404 S.W.3d 292, 301 (Mo. App. E.D. 2012). The plain error standard of review for instructional error requires a two-step process. "The first step involves an examination to determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether on the face of the claim, plain error has, in fact, occurred." State v. Smith, 370 S.W.3d 891, 896 (Mo. App. E.D. 2012). If plain error is found on the face of the claim, we may exercise our discretion to move to the second step and determine whether the claimed error actually resulted in manifest injustice or a miscarriage of justice. Id.

---

[1] All rule references are to Mo. R. Crim. P.

6

Instructional error seldom constitutes plain error. Id. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. Id. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict and caused manifest injustice or miscarriage of justice. Id. "Manifest injustice or miscarriage of justice will result only if it is apparent that the jury's verdict was tainted by the instructional error." Bolden v. State, 423 S.W.3d 803, 813 (Mo. App. E.D. 2013). The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice. Smith, 370 S.W.3d at 896.

B. Myles did not waive plain-error review.

Respondent argues that Myles waived plain-error review when his counsel affirmatively informed the trial court that she had no objection to the proposed instructions. Respondent cites State v. Wright for the proposition that "[t]here is authority to support the conclusion that a defendant waives plain error review by affirmatively stating to the court that he or she has no objection to a proposed instruction." Wright, 30 S.W.3d at 911. This contention, however, fails to acknowledge a subsequent Missouri Supreme Court opinion clarifying this matter.

Rule 28.03 requires counsel to make specific objections to instructions considered erroneous. If a party fails to object to an instruction prior to the jury's retiring to consider its verdict, that party may not assign as error on appeal the giving or failure to give that instruction. Id. While Rule 28.03 makes it clear that a party's failure to object at trial to an instruction preserves nothing for review as to the giving or the failure to give that instruction, State v. Hopkins, 947 S.W.2d 826, 829 (Mo. App. W.D. 1997), the Missouri Supreme Court in State v.

7

Wurtzberger held that the failure to object does not waive plain-error review pursuant to Rule 30.20. State v. Wurtzberger, 40 S.W.3d 893 (Mo. banc 2001).

In Wurtzberger, the defendant was convicted of attempting to manufacture a controlled substance. Id. at 894. Defendant claimed, *inter alia*, on appeal that the trial court had plainly erred in giving the State's verdict director, instructing the jury on that offense. Id. at 896. The State contended that the defendant waived plain-error review of the State's verdict director when defense counsel expressly stated at the instruction conference that he had "no objection" to the giving of the challenged instruction. Id. at 897. In ruling that the defendant had not waived plain-error review by stating "no objection," the Court stated: "Although the state is correct that appellant waived appellate review when counsel failed to raise a specific objection to the disputed ... instruction, it misconstrues the extent of the waiver. Unpreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." Id. at 898. See also State v. Beck, 167 S.W.3d 767, 775 (Mo. App. W.D. 2005).

The Wurtzberger Court expressly addressed the relationship between Rule 28.03 and Rule 30.20 by holding that while a defendant's failure to raise a specific objection to a disputed jury instruction at trial waives appellate review, such failure does not similarly waive plain-error review. The Court explained that a contrary interpretation would misconstrue the extent of the waiver, despite "some confusion regarding the interplay between Rule 30.20 and Rule 28.03." Wurtzberger, 40 S.W.3d at 898. The Court offered clarification, concluding that because "there is no case... holding that Rule 28.03 trumps Rule 30.20," unpreserved claims of plain error "may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." Id. Applying the principles stated in Wurtzberger, we reject Respondent's contention that Myles waived plain-error review due to counsel's affirmative statement that she had no objection to Jury Instructions

8

Nos. 6 and 8. Accordingly, we may review Myles's claims in Points One and Two for plain error.

C. <u>The trial court did not plainly err in submitting Jury Instructions Nos. 6 and 8 to the jury.</u>

The MAI-CR 3d 304.04 Notes on Use state that when the defendant acted with or aided another person in the commission of an offense, the verdict-directing instruction for that offense must be modified to submit the theory of accomplice liability to the jury. To do so, the instruction must be modified in two ways. First, the instruction should include an introductory paragraph stating the following:

> A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids the other persons in committing it.

Second, the portion of the instruction describing the basis for the defendant's conduct being sufficient for criminal responsibility must be followed by a paragraph indicating that the defendant "acted together with" his accomplices or "aided or encouraged" them.

Jury Instructions Nos. 6 and 8 do not comply with the Notes on Use in two ways. First, the introductory paragraph quoted above was not included in either verdict-directing instruction. Instead, that paragraph was presented to the jury as Jury Instruction No. 5. Second, there is no paragraph indicating that the defendant "acted together with" his accomplices or "aided or encouraged" them. Instead, the instructions include the language indicating that Myles "acted with" his accomplices in the portion of the instruction which describes the criminal conduct. Myles notes correctly that Rule 28.02(f) provides that the failure to give an instruction in accordance with the MAI-CR is error, the prejudicial effect of which must be judicially determined. <u>State v. Cooper</u>, 215 S.W.3d 123, 125 (Mo. banc 2007). Jury Instructions Nos. 6

9

and 8 fail to comply with the MAI-CR and are thus erroneous. We now consider whether Myles suffered manifest injustice by virtue of the erroneous instructions.

We are mindful that instructional error constitutes plain error only when the trial court has so misdirected or failed to instruct the jury that it is apparent the instructional error affected the jury's verdict and caused manifest injustice or miscarriage of justice. Manifest injustice or miscarriage of justice results when it is "apparent that the jury's verdict was tainted by the instructional error." Bolden, 423 S.W.3d at 813. Myles claims that the erroneous jury instructions caused manifest injustice in two ways. First, Myles contends that Jury Instructions Nos. 6 and 8 did not require the jury to find beyond a reasonable doubt that Myles acted with the culpable mental state necessary to commit the crimes of first-degree assault and first-degree robbery, respectively. Second, Myles avers that Jury Instructions Nos. 6 and 8 allowed the jury to find Myles guilty despite a lack of evidentiary support. Specifically, Myles claims that Jury Instruction No. 6 permitted the jury to find Myles guilty of first-degree assault as a principal despite no evidentiary support for that finding. Myles contends that Jury Instruction No. 8 ascribed conduct elements to Myles—specifically, that he "acted with" Greene and Johnson—for which there was no evidentiary support.

This Court considered precisely the same claims of instructional error in State v. Jones, 296 S.W.3d 506 (Mo. App. E.D. 2009). Jones was convicted of first-degree robbery, armed criminal action, and resisting arrest. On appeal, Jones asserted that the trial court plainly erred in submitting two jury instructions, numbers 11 and 12, because they failed to comply with MAI-CR 3d 304.04 and lacked evidentiary support. The jury instructions at issue deviated from the MAI-CR Notes on Use in exactly the same two ways as Jury Instructions Nos. 6 and 8 do here: (1) the introductory paragraph was omitted and included in a separate jury instruction, number

10

10; and (2) there was no separate paragraph indicating that Jones "acted together with" or "aided or encouraged" his accomplices, but instead, the "acted with" language was included in the portion of the instruction which described the criminal conduct. Instruction number 10 submitted to the jury in Jones was precisely the same as Instruction No. 5 submitted to the jury in the case at hand. In addition, Jones raised the same arguments in support of his plain error claim as Myles raises in this appeal: (1) that the instructions did not require the jury to find Jones had the required mental state to commit the crimes charged based on accomplice liability; and (2) that the instructions ascribed conduct elements to Jones that were not supported by the evidence, specifically, that Jones "acted with" an accomplice in committing the offenses when in fact he was not present during the commission of the offenses, but instead merely drove the getaway car.

We reviewed Jones's claims for plain error and held that Jones suffered no manifest injustice because he could not show that the instructional error actually affected the jury's verdict. We based our holding on two reasons. First, we concluded that "the jury had a proper understanding of what it needed to believe in order to find [Jones] guilty" based on accomplice liability despite the instructional error. Jones, 296 S.W.3d at 513. We reasoned that instruction number 10 "properly set out the accomplice liability instruction by itself," and cited State v. Wheeler for the proposition that a "jury is presumed to know and follow the instructions given by the trial court." Id.; State v. Wheeler, 219 S.W.3d 811, 817 (Mo. App. S.D. 2007). Second, we concluded that the instructional error was not outcome determinative because the jury would have found Jones guilty even if the jury had been properly instructed. We reasoned that the fact the jury found Jones "acted with" his accomplice "actually satisfies a higher burden than if the jury had been properly instructed that it only needed to find [Jones] 'aided or encouraged' [his accomplice] in committing the crimes." Jones, 296 S.W.3d at 513. We additionally noted in

11

support of this conclusion that the evidence that Jones aided or encouraged his accomplice in committing the charged crimes was strong.

Jones is factually and legally indistinguishable from the case at hand. The same instructional errors made in Jones were made by the trial court here. Myles raises the same claims of error and manifest injustice as those raised in Jones. Consistent with our holding and analysis in Jones, we conclude that the jury was sufficiently instructed as to the standard necessary to convict Myles of the charged crimes based on accomplice liability. Jury Instruction No. 5, just like instruction 10 in Jones, properly set out the accomplice liability instruction by itself. The jury is presumed to know and follow the instructions given by the trial court, including Jury Instruction No. 5.

We also conclude, consistent with our holding in Jones, that the errors found in Jury Instructions Nos. 6 and 8 were not outcome determinative and had no effect on the jury's verdict. Both instructions set a higher burden for conviction than the correct instructions would have set. With respect to Jury Instruction No. 6, the fact that the jury found Myles "acted with" his accomplices in committing first-degree assault satisfies a higher burden than if the jury had been properly instructed that it only needed to find Myles "aided or encouraged" his accomplices. The same is true with respect to Jury Instruction No. 8. It is well-settled that "[a] criminal jury instruction imposing an additional burden on the State beyond that which is legally required in order to establish guilt does not prejudice the defendant." State v. Livingston, 801 S.W.2d 344, 350 (Mo. banc 1990); see also State v. Murray, 630 S.W.2d 577, 580 (Mo. banc 1982). Further, there was strong evidence that Myles "aided or encouraged" his accomplices in committing the crimes of first-degree assault and first-degree robbery. Victim testified that a man approached him, stated he was robbing him, and shot him, and that his car—which was later found in

12

Greene's possession—was taken. Myles told police that he, Greene, and Johnson set out on a "mission" to do something bad, that he struck Victim with either a brick or a closed fist, and that Johnson shot Victim after Myles and Greene pulled Victim away from Johnson.

Thus, while Jury Instructions Nos. 6 and 8 were erroneous, the instructions did not so misdirect the jury as to taint its verdict and cause Myles to suffer manifest injustice. The jury was sufficiently instructed on the accomplice liability standard by Jury Instruction No. 5. Further,the erroneous instructions were not outcome determinative, as the jury would have found Myles guilty even if there had not been any instructional error. Accordingly, the trial court did not plainly err in submitting Jury Instructions Nos. 6 and 8 to the jury. Points One and Two are denied.

## II. Points Three and Four—Sufficiency of the Evidence Claims

### A. Standard of Review

In reviewing the sufficiency of the evidence to support a criminal conviction, our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. State v. French, 308 S.W.3d 266, 272 (Mo. App. E.D. 2010). We view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregard all evidence and inferences to the contrary. Id. Our review is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather is a question of whether, in light of the evidence most favorable to the State, any rational fact-finder "could have found the essential elements of the crime beyond a reasonable doubt." State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011). When reviewing the sufficiency of the evidence supporting a

13

criminal conviction, this Court does not act as a "super juror" or weigh the evidence anew, but instead gives great deference to the trier of fact. Id.

B. Sufficient evidence supports each of the charged crimes against Myles.

Myles submits that the trial court erred in entering judgments of conviction against him as to Counts I and III because Jury Instructions Nos. 6 and 8 allowed the jury to find Myles guilty of first-degree assault and first-degree robbery based on a theory of either principal *or* accomplice liability, despite the fact that no evidence was presented at trial supporting a finding based on principal liability. Myles further argues that his corresponding convictions for armed criminal action, Counts II and IV, cannot stand if his convictions for assault and robbery are vacated.

A challenge to the sufficiency of the evidence supporting a criminal conviction challenges the trial court's ruling on the motion for judgment of acquittal prior to submission of the case to the jury. State v. Lane, 415 S.W.3d 740, 752 (Mo. App. S.D. 2013). As a result, "[t]he question of sufficiency arises before the case is put to the jury and is really an issue of whether the case should have been submitted to the jury." State v. Beggs, 186 S.W.3d 306, 312 (Mo. App. W.D. 2005). Further, when a defendant challenges the denial of a motion for judgment of acquittal at the close of all evidence occurring *before* the trial court instructed the jury, as is the case here, we "evaluate whether the State presented sufficient evidence to submit to the jury the cases against the defendant for [the charged crimes] *without regard* to the form of the verdict-director." State v. Young, 369 S.W.3d 52, 54 n.3 (Mo. App. E.D. 2012) (emphasis added);[2] Lane, 415 S.W.3d at 752; Jones, 296 S.W.3d at 509.

---

[2] Young is particularly instructive on this procedural issue. There, as here, the appellant asserted an instructional error claim based on the verdict director in his first point and a sufficiency of the evidence claim in his second point. This Court clarified that because the appellant was challenging the denial of his motion for judgment of acquittal at the close of evidence, which occurred before the trial court instructed the jury, appropriate analysis of the two claims

The focus of our review when addressing a claim challenging the sufficiency of the evidence is to look at "the elements of the crime and consider each in turn." State v. Hines, 377 S.W.3d 648, 655 (Mo. App. S.D. 2012). Our review is limited to a determination of whether, viewing the evidence in the light most favorable to the State, there is sufficient evidence from which a reasonable juror could have found the essential elements of the charged crime beyond a reasonable doubt. "The elements of an offense are derived from the statute establishing the offense or, when relevant, common law definitions." Id. There must be sufficient evidence of each element of the offense. Id. Thus, we are concerned only with the sufficiency of the evidence supporting each of Myles's charged crimes, based upon the evidence presented at trial and the elements of each respective crime as set forth by statute and common law. As explained, we are not concerned with the verdict-directing instructions submitted to the jury, but instead review the sufficiency of the evidence supporting each charged crime *before* the case was submitted to the jury. Young, 369 S.W.3d at 54 n.3; Lane, 415 S.W.3d at 752.

The concept of accomplice liability dictates that "all persons who act in concert to commit a crime are equally guilty." State v. Sistrunk, 414 S.W.3d 592, 597 (Mo. App. E.D. 2013). To support a conviction based on accomplice liability, the State need only show that the defendant associated himself with the venture or participated in the crime in some manner; there is no need to show that the defendant personally committed every element of the crime. Id. Instead, any direct or circumstantial evidence demonstrating affirmative participation in the crime charged and committed is sufficient to support a conviction. Id. Careful review of the record and the elements of each the charged crimes reveals sufficient evidence of Myles's

---

required the following: "[W]e will evaluate whether the State presented sufficient evidence to submit to the jury the cases against the defendant for first-degree assault and armed criminal action without regard to the form of the verdict-director. We will address the alleged instructional error in our consideration of the defendant's second point." Id.

15

involvement in the charged crimes, as an accomplice, to support the trial court's submission of the case to the jury with respect to each charged crime. Viewing the evidence presented at trial in the light most favorable to the State, Myles's statements to the police, as well as the testimony of Victim, provide ample sufficient evidence from which a reasonable juror could have found the essential elements of the charged crimes beyond a reasonable doubt.

The charged crime in Count I, first-degree assault, is codified in Section 565.050,[3] which states that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Myles told the police that he, Greene, and Johnson decided to go out on a "mission" to do something bad; that he stood across the street while Johnson approached Victim with a gun; that he became involved in the altercation that ensued between Johnson and Victim, striking Victim with either a brick or a closed fist; and that Johnson shot Victim after Myles and Greene pulled Victim away from Johnson. These statements provide sufficient evidence from which a reasonable juror could have found the essential elements of the charged crime of first-degree assault beyond a reasonable doubt based on a theory of accomplice liability, as Myles associated himself with the criminal venture and affirmatively participated in the attempt to kill or cause Victim serious physical injury.

The charged crime in Count III, first-degree robbery, is codified in Section 569.020 and specifies that:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, (1) Causes serious physical injury to any person; or (2) Is armed with a deadly weapon; or (3) Uses or threatens the immediate use of a dangerous instrument against any person; or (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

---

[3] All statutory references are to RSMo. 2000.

16

Victim testified that he was approached by a man with a gun who stated he was robbing Victim, and that Victim's car was taken after he was shot. Myles told the police that he, Greene, and Johnson set out on a "mission" to do something bad; that he stood across the street while Johnson approached Victim with a gun; that he struck Victim with either a brick or a closed fist; and that Johnson shot Victim after Myles and Greene pulled Victim away from Johnson. Victim's testimony and Myles's statements provide sufficient evidence from which a reasonable juror could have found the essential elements of the charged crime of first-degree robbery beyond a reasonable doubt based on a theory of accomplice liability. The evidence demonstrated that Myles associated himself with and affirmatively participated in the criminal venture to forcibly steal Victim's property—specifically, his car—during the course of which Johnson used a deadly weapon to cause serious physical injury to Victim.

Finally, Myles was charged in Counts II and IV with two counts of armed criminal action. Armed criminal action is codified in Section 571.015, which provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." As outlined above, there was substantial evidence presented at trial showing that Myles committed two felonies—first-degree assault and first-degree robbery—with the use of a deadly weapon under a theory of accomplice liability. As such, there is sufficient evidence from which a reasonable juror could have found the essential elements of the charged crime of armed criminal action beyond a reasonable doubt with respect to Counts II and IV.

Because there was sufficient evidence presented at trial from which a reasonable juror could have found the essential elements of each of the charged crimes in Counts I-IV beyond a

17

reasonable doubt, the trial court did not err in submitting the case to the jury. Points Three and Four are denied.

Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., and Patricia L. Cohen, J., concur.