

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111282 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Katherine M. Fowler |
| CYREZ JONES, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 5, 2024 |

### Introduction

Cyrez Jones ("Jones") appeals from the trial court's judgment following a jury conviction for unlawful use of a weapon. Jones raises three points on appeal. In Point One, Jones contends the trial court erred in denying his motion for acquittal because the State failed to adduce sufficient evidence to prove beyond a reasonable doubt that Jones did not act in self-defense or in defense of another. In Point Two, Jones alleges the trial court plainly erred in failing sua sponte to instruct the jury on defense of another. Point Three similarly asserts the trial court plainly erred in failing sua sponte to instruct the jury on self-defense. Point Two is dispositive of Jones's appeal. Because the trial court plainly erred by failing to instruct the jury on use of force in defense of another, the judgment is reversed and the case is remanded for a new trial.

## Factual and Procedural History

This case arises out of a brief encounter in St. Louis City's Bevo Mill neighborhood, after which the State charged Jones under Section 571.030.1(4)[1] for exhibiting, in the presence of one or more persons, a weapon readily capable of lethal use in an angry or threatening manner. The case proceeded to jury trial, where Jones testified in his own defense. The following evidence, viewed in the light most favorable to the jury instruction at issue, was adduced.[2]

On April 5, 2021, Jones was driving his car with two male passengers when he drove upon the scene of a homicide that had just occurred. A large crowd of onlookers had already gathered. Plain clothes officers, including Detective T.M. ("Detective"), were present at the scene, talking with people in the crowd and hoping to find witnesses to the homicide.

As Jones drove upon the scene, the front-seat passenger ("Passenger") unrolled the passenger-side window and leaned his body outside of the car. A verbal exchange ensued between Passenger and an unknown person in the crowd ("Bystander"). Initially, Passenger and Bystander were "talking back and forth," but the exchange escalated into a verbal altercation. Passenger told Jones that Bystander was pulling out a gun from behind his back. At that moment, there was not much distance between Jones's car and Bystander; Jones testified that they were "close, close enough where anything could happen." Jones believed Bystander was "fixing to start firing," and that, had he kept driving, Bystander "would have just started shooting at the car." Passenger "ducked down," which caused Jones to believe that Bystander was going to start shooting into the car at Passenger. Jones testified that "[Passenger] was . . . in fear of his life" and that, to "[p]rotect [his] friends," Jones stopped driving and grabbed a gun from the backseat of the car.

---

[1] All Section references are to RSMo (2016).
[2] See State v. Barnett, 577 S.W.3d 124, 126 (Mo. banc 2019).

Jones then got out of his car with his gun behind his back, pointed down. He stood near the back of his car, scanning the crowd for Bystander. Seeing neither a "threat" nor "anybody pointing [a] gun at [him or his passengers]," Jones returned to his car and drove away. Detective, who had observed Jones, testified that Jones got out of his car within "seconds" of the verbal altercation beginning and that the entire exchange was "real[ly] quick."

At some point, an unknown member of the crowd yelled out that "someone has a gun." Many onlookers fled, running in different directions. Detective and his partner returned to their car and followed Jones. A block or two from the scene, Detective and his partner activated their car lights and arrested Jones for unlawfully exhibiting a weapon.

At trial, the instruction conference took place after voir dire and before opening statements. The State proposed various instructions, including the verdict director. The trial court asked Jones if he had any objections to the State's proposed instructions. Each time, Jones responded, "No, Your Honor." The trial court accepted a set of instructions that included neither a self-defense nor a defense of another instruction. Jones did not request a self-defense or defense of another instruction. At no point did the trial court sua sponte modify the instructions proposed by the State.

At various times during the trial, both the State and Jones raised the issues of self-defense and defense of another before the jury. For example, during Jones's opening statement, counsel explained that Jones "got out of [his] car because [he] was standing [his] ground." During closing arguments, the State responded:

> [Jones has] tried to explain it. He's tried to say that, you know, he was standing his ground. But you don't get to stand your ground when you're driving by and someone yells at your friend. That's not standing your ground. That's injecting yourself into a situation, and that's what [Jones] did here.

3

The State also argued that "[Jones] brought [the gun] out in the middle of the crowd in order to protect [Passenger]." In Jones's closing argument, counsel stated that Jones "need[ed] to exit his vehicle because he [was] afraid there [was] a gun that [would] be shot at him and his occupants."

Approximately thirty minutes into the deliberations, the jury foreperson sent a question to the trial court, which the court read into the record:

> [A]re there legal protections in the State of Missouri that would give [Jones] reasonable confidence that he could exhibit a weapon but keep it discreet/pointed down and not appear threatening? Stand your ground[?] and be within the letter of the law[?]

Jones asked the trial court to respond to the jury by explaining stand-your-ground law in Missouri, specifically that Jones had no duty to retreat. The trial court denied the request, admonishing Jones: "[T]here has been no evidence in this case, no stand-your-ground law. The jury's not been instructed in any way on stand-your-ground law. That's not been even an issue in the case, and the Court doesn't feel that would be the appropriate response to this question." The trial court instructed the jurors that they should be guided by the evidence as they remembered it and by the reasonable inferences derived therefrom.

The jury found Jones guilty of unlawful use of a weapon. The trial court sentenced Jones to prison for two years but suspended the execution of the sentence and placed Jones on a two-year probation period. This appeal follows.

## Points on Appeal

Jones raises three points on appeal. In Point One, Jones contends the trial court erred in denying his motion for acquittal at the close of all evidence because the State failed to prove beyond a reasonable doubt that Jones did not act in self-defense or defense of another. Points Two and Three concern instructional error. Jones maintains the trial court plainly erred in failing

4

sua sponte to instruct the jury on justified use of force in defense of another (Point Two) and in self-defense (Point Three).

## Standard of Review

Rule 28.03[3] establishes counsel's duty to make specific objections to jury instructions or verdict forms. Jones acknowledges he did not object to the instructions at trial and thus this point was not preserved for appeal. Jones asks that we use our discretion to review for plain error pursuant to Rule 30.20.

"Generally, this Court does not review unpreserved claims of error." State v. Brandolese, 601 S.W.3d 519, 525 (Mo. banc 2020). Rule 30.20 creates an exception and gives this Court discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted." Id. at 526 (quoting Rule 30.20). Our review under Rule 30.20 is a two-step process. State v. Minor, 648 S.W.3d 721, 731 (Mo. banc 2022). "The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." Id. (quoting Grado v. State, 559 S.W.3d 888, 899 (Mo. banc 2018)). Manifest injustice must be established in connection to the particular facts and circumstances of the case. State v. Baxter, 204 S.W.3d 650, 652 (Mo. banc 2006).

Only if the appellant meets this threshold burden do we proceed to the second step, where we initially determine whether the claimed error is "plain error," in that it is "evident, obvious, and clear." State v. Jackson-Kuofie, 646 S.W.3d 312, 315 (Mo. App. W.D. 2022) (citing State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009)). If we find plain error, we determine whether it actually resulted in manifest injustice or miscarriage of justice. Minor, 648 S.W.3d at 731

---

[3] All Rule references are to Mo. R. Crim. P. (2022).

(quoting Grado, 559 S.W.3d at 899–900). Instructional error constitutes plain error when it is apparent that the trial court's failure to instruct the jury affected the jury's verdict. State v. Celis-Garcia, 344 S.W.3d 150, 154 (Mo. banc 2011).

Discussion

## I.    Waiver of Instructional Error Claims

As a preliminary matter, we address the issue of waiver. The State contends that Jones waived plain error review of his instructional error claims because Jones affirmatively stated he had no objection to the State's instructions, including the verdict director. Because the Supreme Court of Missouri clearly has held to the contrary, we hold Jones has not waived plain error review.

The State correctly identifies that, in certain contexts, counsel's affirmative statement of "no objection" waives plain error review. See, e.g., State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009) (finding defense counsel's statement of "no objection" to the admission of an *exhibit* into the evidentiary record waives plain error review on appeal). But in relation to claims of *instructional error*, Missouri caselaw is clear that a defendant's affirmative statement of "no objection" to a jury instruction proposed by the State does not waive plain error review. See Celis-Garcia, 344 S.W.3d at 154 n.3 (citing State v. Wurtzberger, 40 S.W.3d 893, 897–98 (Mo. banc 2001)) (reiterating that plain error review is not waived when counsel "affirmative[ly] state[s] that he ha[s] no objection to [an] instruction" or "fail[s] to submit an alternative instruction"); see also State v. Myles, 479 S.W.3d 649, 654–57 (Mo. App. E.D. 2015) (relying on Wurtzberger to hold that an affirmative statement of "no objection" to an instruction does not waive plain error review). "Unless and until the Supreme Court re-evaluates the availability of plain error review of jury instructions in a criminal case, particularly where the defendant has affirmatively expressed no objection to the instructions[,] . . . we are without authority to

6

conclude that plain error review has been waived." State v. Coyle, 671 S.W.3d 702, 712 (Mo. App. W.D. 2023).[4]

Moreover, the challenged instructions were proffered by the *State*, and not Jones, which distinguishes this case from State v. Clay, 533 S.W.3d 710 (Mo. banc 2017), and State v. Bolden, 371 S.W.3d 802 (Mo. banc 2012), upon which the State relies. In those cases, the Supreme Court created an exception from the general principle set forth above, noting that an appellant invites instructional error, thereby waiving plain error review, when he "proffer[s] jointly with the state" the self-defense instruction he seeks to challenge. Clay, 533 S.W.3d at 714–15; see also Bolden, 371 S.W.3d at 806.[5] Such cases are inapposite to circumstances where, as here, the appellant did not submit, either individually or jointly with the State, the challenged instruction.

The State avers that cases subsequent to Wurtzberger cast doubt on the above propositions. We disagree. The only cases the State cites in support, Johnson and State v. Hughes, 563 S.W.3d 119 (Mo. banc 2018), concern the admission of exhibits into the evidentiary record, not instructional error. As we have already noted, our Supreme Court has established a distinct treatment for claims seeking plain error review of instructional error.

Finding Jones has not waived plain error review, we proceed to the merits of his claims.

---

[4] The State points to State v. Sanders, 449 S.W.3d 812, 816 (Mo. App. S.D. 2014), for the proposition that an affirmative statement of no objection waives plain error review. Sanders relies on State v. Wright, 30 S.W.3d 906, 911–12 (Mo. App. E.D. 2000), for support of this proposition. However, Wright was published *before* Wurtzberger and Celis-Garcia. Our analysis is guided by our Supreme Court's most recent controlling decision. See State ex rel. Beisly v. Perigo, 469 S.W.3d 434, 454 (Mo. banc 2015).

[5] For the same reason, the State's reliance on State v. Plunkett, 487 S.W.3d 480 (Mo. App. S.D. 2016), and State v. Marshall, 302 S.W.3d 720 (Mo. App. S.D. 2010), is unpersuasive. In those cases, the defendant invited the error by proffering—either on his own or jointly with the State—the instruction he subsequently sought to challenge.

## II. Point Two—Failure to Instruct the Jury on Defense of Another

### A. Jones Satisfied His Threshold Burden Under Plain Error Review

We are persuaded that, under the broad protections allowed under the current state of the law in Missouri regarding defense of another, Jones meets his initial burden of facially establishing substantial grounds for believing manifest injustice or miscarriage of justice resulted. See Minor, 648 S.W.3d at 731. With ample reference to binding authority, Jones submits that, given the particular facts of his case—particularly Jones's testimonial evidence, opening statements, closing arguments, and the jury's question to the trial court—there are substantial grounds for believing that the trial court's failure to correctly instruct the jury with regard to defense of another led to manifest injustice, in that such failure likely affected the jury's verdict. See Celis-Garcia, 344 S.W.3d at 154.

Because Jones has satisfied his threshold burden, we exercise our discretion to proceed and determine whether the claimed error was a plain error resulting in manifest injustice or miscarriage of justice. See Minor, 648 S.W.3d at 731.

### B. Failure to Issue a Defense of Another Instruction Was a Plain Error

The statute under which Jones was charged, Section 571.030.1, expressly provides that a defendant may be exempted from criminal liability if he acted in self-defense or defense of another. Sections 571.030.1(4)–.5, 563.031; see also State v. Parkhurst, 845 S.W.2d 31, 36 (Mo. banc 1992). Specifically, a defendant's use of physical force may be justified when he reasonably believes such force is necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by another. State v. Smith, 456 S.W.3d 849, 852 (Mo. banc 2015); Section 563.031.1. Unlawfully exhibiting a weapon constitutes a use of deadly force. State v. Kendrick, 550 S.W.3d 117, 123 (Mo. App. W.D. 2018) (citing Parkhurst, 845 S.W.2d at 36). A defendant may be justified in using deadly force if

8

he "reasonably believes that such deadly force is necessary to protect himself . . . or another against death, serious physical injury, or any forcible felony." Id. (quoting Section 563.031.2).

A "reasonable belief" is "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief." Smith, 456 S.W.3d at 852. The reasonableness of a belief does not depend on whether the belief turned out to be true or false; rather, it turns on how the facts reasonably appeared to the defendant at the time. Id. Critically, the reasonableness of a defendant's belief is a question of fact reserved for the jury's determination. State v. Amschler, 477 S.W.3d 10, 14 (Mo. App. E.D. 2015); State v. Whipple, 501 S.W.3d 507, 518 (Mo. App. E.D. 2016).

"Self-defense" and "defense of another" are "closely related justification defenses, governed by the same statute," and thus "many cases discussing aspects of one are applicable to the other, and are sometimes used interchangeably herein." State v. Endicott, 600 S.W.3d 818, 823 (Mo. App. E.D. 2020); Bolden, 371 S.W.3d at 805 (describing defense of another as "essentially an extension of the self-defense justification"). "Defense of another is available if, under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force in defense of himself." Endicott, 600 S.W.3d at 823 (internal citation omitted).

"The defendant has the burden of injecting the issue of justification into the case; if successful, the State bears the burden of proving beyond a reasonable doubt that the defendant did not reasonably believe force was necessary." Id. (citing Section 563.031.5). Thus, Jones had the burden of injecting the elements of the defense of another justification into evidence, specifically that (1) Passenger was not the initial aggressor, (2) Jones reasonably believed physical force was necessary to defend Passenger from what he reasonably believed to be the

9

imminent use of unlawful force by Bystander, (3) Jones reasonably believed deadly force was necessary to protect Passenger against death, serious physical injury, or forcible felony, and (4) Jones did not have a duty to retreat. See State v. Whitaker, 636 S.W.3d 569, 573 (Mo. banc 2022); Section 563.031.1–2. The quantum of evidence through which Jones was required to inject the issue of acting in defense of another variably has been described as "substantial evidence," "evidence putting it in issue," "any theory of innocence . . . however improbable that theory may seem, so long as the most favorable construction of the evidence supports it," and "evidence to support the theory." State v. Bruner, 541 S.W.3d 529, 535 (Mo. banc 2018). Recently, however, the Supreme Court "has settled on describing the quantum of proof required as 'substantial evidence,'" and we will do the same. Id. (clarifying that the term "substantial evidence" does not reflect an intent to increase the defendant's burden for injecting the issue of self-defense). "Substantial evidence of [defense of another] requiring instruction may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that he acted in [defense of another]." State v. Westfall, 75 S.W.3d 278, 280 (Mo. banc 2002).

In determining whether a defense of another instruction is supported by substantial evidence, a court must view the evidence and all reasonable inferences in the light most favorable to the defendant. State v. Barnett, 577 S.W.3d 124, 126 (Mo. banc 2019); Endicott, 600 S.W.3d at 823. "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." Westfall, 75 S.W.3d at 280; see also Missouri Approved Instructions–Criminal ("MAI–CR") 4th 406.08 n.2 (2017) ("*Whenever* there is evidence supporting [defense of another], this instruction *must* be given.")

(emphasis added). "[T]he failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." Westfall, 75 S.W.3d at 281.

Our review of the record, viewed in the light most favorable to Jones, reveals substantial evidence from which a jury could find that Jones acted in defense of Passenger. See Endicott, 600 S.W.3d at 824.

First, drawing the facts and reasonable inferences therefrom in Jones's favor, Jones adduced substantial evidence to show Passenger was not the initial aggressor. Testimonial evidence suggested an exchange between Passenger and Bystander escalated into a verbal altercation. Evidence that Passenger was hanging out of the car window while engaged in the verbal exchange could possibly support a finding that Passenger initiated the altercation. But the altercation was merely verbal until Bystander brandished a gun. We recognize that the record is not precise about whether Bystander or Passenger initiated the verbal exchange, but "[w]here, as in this case, there were arguably acts of aggression or provocation by [more than one party], it is for the jury to determine which party had been the initial aggressor." Whipple, 501 S.W.3d at 518 (citing State v. Chambers, 671 S.W.2d 781, 783 (Mo. banc 1984)); see also State v. Miller, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002) (noting that conflicting evidence about an element of self-defense is for a jury to resolve). But more importantly, our Supreme Court has recognized that when two parties are in a verbal exchange, and one party escalates the exchange by threat of physical force, then a jury could reasonably conclude that *the party who initiated the physical threat was the initial aggressor.* See Chambers, 671 S.W.2d at 783 (emphasis added).

11

We are further persuaded that Jones injected substantial evidence from which the jury could determine he reasonably believed force was necessary[6] to defend Passenger from the imminent use of unlawful force by Bystander. See Smith, 456 S.W.3d at 852 (quoting Section 563.031.1). Again, viewing the evidence in the light most favorable to Jones, we note Jones testified that, while Passenger was leaning out of the open car window, Bystander grabbed a gun as if to start shooting toward Jones's car. Jones testified that his car was "close enough where anything could happen," and further testified that Passenger ducked down as if to dodge a bullet. Such testimony, if believed by the jury, could support a finding that Jones reasonably believed Bystander threatened the imminent use of force. Jones testified that he needed to "[p]rotect [his] friends," explaining that Passenger appeared to be scared for his life. Jones further described a fear that, had he driven away, Bystander would have begun shooting at the car. See Endicott, 600 S.W.3d at 824 (finding that a witness's testimony that he feared for the safety of friends supported giving a defense of another instruction); see also Whipple, 501 S.W.3d at 520. Ultimately, Jones's veracity and the reasonableness of Jones's belief are questions of fact to be determined by the jury. Whipple, 501 S.W.3d at 520. When drawing all reasonable inferences in Jones's favor, as we must, we find his testimony squarely put at issue that he acted under a reasonable belief that force was necessary to defend Passenger from Bystander's imminent use of force.

Third, Jones injected substantial evidence from which a jury could find he reasonably believed deadly force was necessary to protect Passenger against death or serious physical injury.

---

[6] The State cites to State v. Hurst, 663 S.W.3d 470 (Mo. banc 2023) to suggest that Jones's actions were not "necessary." However, Hurst analyzes "necessity" in terms of the *necessity defense*—not justified use of force in defense of another. 663 S.W.3d at 474–75. As the Hurst concurrence plainly notes, the term "necessity" is subject to different analyses under the different defenses: "The application of self-defense pursuant to Section 563.031.1 depends first and foremost on whether the defendant 'reasonably believes' force is necessary to defend him or herself. The defense of necessity pursuant to Section 563.026 requires no such analysis." Id. at 479 (Powell, J., concurring) (footnote omitted).

See Kendrick, 550 S.W.3d at 123–24 (citing Parkhurst, 845 S.W.2d at 36). "To justify the use of deadly force, some affirmative action, gesture, or communication by the person feared indicating the immediacy of danger . . . must be present." State v. Akins, 643 S.W.3d 923, 925 (Mo. App. E.D. 2022) (internal quotation omitted). Missouri courts have repeatedly found that, as a matter of law, a defendant is not entitled to use deadly force when there was no evidence that the aggressor possessed, exhibited, or threatened to use a weapon capable of lethal force. See Smith, 456 S.W.3d at 852; Bruner, 541 S.W.3d at 537–38; Kendrick, 550 S.W.3d at 124; Dorsey v. State, 113 S.W.3d 311, 317 (Mo. App. S.D. 2003). These cases uphold the proposition that a defendant may not "introduce[] a . . . deadly instrument into what had been, at most, a simple battery[.]" Bruner, 541 S.W.3d at 537 (internal citation omitted). This, however, was not such a case.

Rather, this case falls into a line of precedent finding that, when an initial aggressor displays a lethal weapon, the defendant may be justified in responding with deadly force. See, e.g., Endicott, 600 S.W.3d at 824; Stiers v. State, 229 S.W.3d 257, 262 (Mo. App. W.D. 2007). Jones testified that Passenger saw Bystander grabbing a gun and then ducked down, as if he was about to be shot. "Unquestionably, the risk of death or serious physical harm is significantly elevated when one of the parties to an angry confrontation displays a handgun." Parkhurst, 845 S.W.2d at 36. As we have already noted, testimony further established that Passenger feared for his life, Jones believed Bystander was going to start shooting toward Jones's car, and Jones acted to protect Passenger. See Endicott, 600 S.W.3d at 824.

Drawing all reasonable inferences in his favor, Jones responded to Passenger's report of an affirmative gesture by Bystander—specifically, the drawing of a gun—and Passenger's immediate conduct in ducking down in a manner that indicated an immediate threat of death or

13

serious injury to Passenger. See Akins, 643 S.W.3d at 925; Kendrick, 550 S.W.3d at 123–24. Such evidence puts in issue that Jones reasonably believed he was justified in using deadly force by exhibiting a gun. See id. Again, whether this belief was reasonable is for the jury, not this Court, to determine. See Chambers, 671 S.W.2d at 783 ("The reasonableness of a defender's belief in the necessity of using deadly force is generally a question for the jury."). "However improbable, there is evidence to support the [defense of another] theory put forward by the defense." State v. Weems, 840 S.W.2d 222, 227 (Mo. banc 1992).

The State asks us to find Jones was not entitled to an instruction because he did not personally see Bystander and only relied on Passenger's statements, which the State characterizes as hearsay.[7] As an initial matter, we find that Jones did not exclusively rely on Passenger's statements. Although Jones *heard* Passenger state Bystander was drawing a gun, Jones *personally observed* Passenger duck down and appear "in fear of his life." Our decision must turn on how the circumstances reasonably appeared to Jones, not whether they turned out to be true. See Endicott, 600 S.W.3d at 825. Moreover, our caselaw is clear that that the credibility of Jones's testimonial evidence—including whether it supports a theory of defense of another— is a matter reserved for the jury. Weems, 840 S.W.2d at 227; State v. Avery, 120 S.W.3d 196, 203 (Mo. banc. 2003), *overruled on other grounds by* Barnett, 577 S.W.3d 124 (reserving for the jury's determination "the credibility of the testimony" supporting a theory of self-defense). Although a jury may ultimately conclude that Jones's testimony was not credible or that his belief in the need for deadly force was not reasonable, these are matters the jury is entitled to decide. See Amschler, 477 S.W.3d at 15.

---

[7] The State failed to object to Jones's testimony recalling Passenger's statements on hearsay grounds.

14

Critically at issue here is Missouri law's clear dictate that Jones had no duty to retreat. Jones established that he was on a street, in and around his car, when he displayed his gun. In 2016, the Missouri legislature amended Section 563.031 to include a provision that a person "does not have a duty to retreat" from "any . . . location such person has the right to be." Section 563.031.3(3); see also State v. Sinks, 652 S.W.3d. 322, 343 & n.4 (Mo. App. E.D. 2022) (analyzing the legislature's revisions to find a defendant had no duty to retreat from a fast-food restaurant). We are bound by statutory language that plainly states Jones had no duty to retreat from any place he has a right to be, including a public street. See Robert H. Dierker, 32 MO. PRAC. SERIES § 9.3 (2d ed.) (Dec. 2023 Update) (analyzing the amendments to Section 563.031 and concluding that the "basic rule of statutory construction suggests that when the legislature plainly says 'no duty,' then there is no duty").

The State nevertheless suggests Jones should have responded to the threat another way, such as by yelling out for help or ducking behind the vehicle for cover. Similarly, at trial, the State suggested that Jones could have better protected his passengers if he had kept driving. Whether we view Jones's decision not to retreat as sensible or prudent is not at issue under the current state of Missouri law. The Missouri legislature has sanctioned a person's refusal to retreat from a dangerous or threatening situation, regardless of how careless that refusal may seem to another person.

Additionally, part of viewing the evidence in the light most favorable to the defense-of-others jury instruction means indulging reasonable inferences from Detective's testimony that the entire exchange was "real[ly] quick" and unfolded in "seconds." See Whitaker, 636 S.W.3d at 757. Our Supreme Court has instructed appellate courts to consider the speed with which interactions between a defender and aggressor unfold:

15

> It is all well and good to analyze the evidence on a moment by moment basis and claim the ability to parse these two individuals' purposes and beliefs across each indivisible instant of time. Reality, however, is much different. This entire altercation . . . was both dangerous and dynamic and certainly it lasted far less time than it takes to recount here.

State v. Straughter, 643 S.W.3d 317, 326 (Mo. banc 2022) (quoting Whitaker, 636 S.W.3d at 575). In light of this admonishment, we must decline the State's invitation to analyze Jones's conduct through the lens of hindsight.

On the whole, viewing the evidence and inferences in the light favorable to Jones, a defense of another instruction was supported by substantial evidence. See Endicott, 600 S.W.3d at 826. The trial court's failure to instruct the jury accordingly constituted plain error. See Westfall, 75 S.W.3d at 281. We thus next determine whether the plain error resulted in manifest injustice. See Minor, 648 S.W.3d at 731.

### C. The Trial Court's Failure to Instruct Resulted in Manifest Injustice

Manifest injustice or miscarriage of justice results when it is apparent that the jury's verdict was affected by instructional error. Myles, 479 S.W.3d at 655–56; see also Celis-Garcia, 344 S.W.3d at 154. Failure to give a mandatory instruction is grounds for reversal on plain error review. Endicott, 600 S.W.3d at 823. In fact, "[o]nce there is a finding of error in failing to properly instruct on [defense of another], a manifest injustice will generally be found." State v. Hiltibidal, 292 S.W.3d at 488, 495 (Mo. App. W.D. 2009); State v. Morrow, 41 S.W.3d 56, 59 (Mo. App. W.D. 2001) ("Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but the trial court does not submit an instruction on the issue to the jury regardless of whether the defendant requests the instruction.").

When a jury is not properly instructed, appellate courts are left to conjecture about whether the defendant was found guilty on a correct and lawful basis. Endicott, 600 S.W.3d at 826. Our Supreme Court has reiterated the importance of properly and fully instructing a jury:

> Missouri has traditionally placed great emphasis on legally correct instructions, and this Court has made it clear that criminal defendants should be freely allowed to argue their contentions arising from the facts. The MAI and its Notes on Use mandated the . . . instruction. Failure to provide the required instruction, or give it in accordance with an accompanying Note on Use, may have adversely influenced the jury and is reversible error.

Westfall, 75 S.W.3d at 284 (internal footnotes omitted). By omitting a defense instruction supported by the evidence, "the trial court completely relieve[s] the State of its burden to prove beyond a reasonable doubt that [the defendant] was not justified in using force[.]" State v. Seay, 256 S.W.3d 197, 201–02 (Mo. App. E.D. 2008) (finding manifest injustice resulted because the jury was not "given any means by which to consider" evidence of justification in reaching its verdict); Endicott, 600 S.W.3d at 826 ("Because the jury was not given an instruction on the issue of whether [the appellant] acted in lawful defense of [another], they were unable to consider all legal theories supported by the evidence under which [the appellant's] action may have been justified."). As we have already outlined, here the jury repeatedly heard evidence that Jones may have acted in defense of Passenger, but it was not given any means by which to apply the evidence to the verdict. See Seay, 256 S.W.3d at 201–02.

Endicott reasoned that an improperly instructed jury is not only "ignorant of the relevant law," but is also at "risk [of] being misled by counsel's argument." 600 S.W.3d at 826; see also Hiltibidal, 292 S.W.3d at 495 (finding it is "especially [] true" that manifest injustice results "when the prosecution's argument has likely further confused the jury as to whether self-defense may be considered"). That risk was clearly present here. During his opening statement, Jones introduced the idea that his actions were part of "standing [his] ground." Jones's testimony

clearly implicated a stand-your-ground defense. During closing argument, the State challenged Jones's defense that he was "standing his ground" and "protect[ing] his [Passenger]."[8] Although we cannot know precisely what the jury believed, within thirty minutes of deliberating, the jury asked the trial court whether it could consider the availability of a stand-your-ground defense. The trial court instructed the jury to be guided by the existing evidence. See Amschler, 577 S.W.3d at 15 (finding manifest injustice resulted where "both the State and Defendant's counsel discussed the issue of self-defense with the jury" and "the jury inquired during deliberations whether they could consider self-defense"). The jury's question strongly suggests that the jurors were likely confused by the arguments advanced *by both attorneys* suggesting that defense of another was an issue to consider in this case. See Hiltibidal, 292 S.W.3d at 495.

Accordingly, it is readily apparent to this Court that the instructional error affected the jury's verdict, resulting in manifest injustice. Celis-Garcia, 344 S.W.3d at 154; Myles, 479 S.W.3d at 655–56. Therefore, we find Jones has met the high burden to demonstrate reversible plain error. See Endicott, 600 S.W.3d at 827. We grant Point Two, which is dispositive of the appeal.

Conclusion

Because substantial evidence was adduced at trial to warrant an instruction on use of deadly force in defense of another, the trial court committed plain error by not offering such an

---

[8] We recognize that in common parlance, "standing your ground" is often equivocated with the justifiable use of force. See 32 MO. PRAC. SERIES § 9:3 (2d ed.) (Dec. 2023 Update) (explaining that the right of a person not to retreat from "any other location such person has the right to be" seems "to amount to the so-called 'stand your ground' concept, i.e. that a person attacked need not retreat or seek to avoid the danger, but may always meet force with force"); see also § 9:4 ("The matter of the duty to retreat from any location where the actor has a right to be tends to blur the distinction between the 'castle doctrine' and the right of self-defense generally under the rubric 'stand your ground.'").

instruction to the jury. Therefore, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

_Kurt S Odenwald_
KURT S. ODENWALD, Presiding Judge

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.